STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. SAMUEL GIARDINA, DEFENDANT-APPELLANT, AND NICHOLAS VANDERHAVE, *ET AL.*, DEFENDANTS.

Argued May 6, 1958—Decided June 16, 1958.

314

*Mr. James A. Major* argued the cause for defendant-appellant.

*Mr. Archibald Kreiger,* Deputy Attorney-General, argued the cause for plaintiff-respondent (*Mr. Charles S. Joelson,* Deputy Attorney-General, Acting Passaic County Prosecutor, attorney; *Mr. Archibald Kreiger,* of counsel).

The opinion of the court was delivered by

WEINTRAUB, C. J.   Samuel Giardina and four others were indicted for conspiracy to steal property of Pantasote Leather Company.   Three pleaded *"non vult."*   Giardina and defendant Harley Hollmond stood trial and were convicted.   Giardina appealed.   The Appellate Division affirmed, 47 *N. J. Super.* 483 (1957), and we granted certification.   26 *N. J.* 244 (1958).

The thefts covered by the indictment spanned a period of two years.   Defendant Nicholas Vanderhave was employed by Pantasote as receiving clerk and distribution clerk.   He shipped Pantasote's property from its place of business to Giardina through Hollmond, a trucker.

Vanderhave pleaded *"non vult"* and testified for the State. He related telephone conversations he had with Giardina and a co-defendant, Rosen, in which arrangements were made for delivery of the loot and payment to the witness.   These calls were made to or by Vanderhave at Pantasote's plant, through the switchboard operated by its employee, Mrs. Emily Kolano.   The sole issue is whether the trial court

erred in permitting Mrs. Kolano to testify to conversations to which she had listened at the switchboard, in corroboration of Vanderhave's testimony.

There were five trunk lines and some 40 extensions. The incoming calls for Vanderhave were initially received by Mrs. Kolano and the outgoing calls were made by her at his request. Her suspicions were aroused by the furtive nature of the calls. Apparently after overhearing one or two of the conversations, she reported her suspicions to someone "in authority" and inferentially her course was approved.

Defendant claims Mrs. Kolano violated the state and federal wire tap statutes and upon that premise claims error in the receipt of her testimony. The challenge does not implicate any constitutional provision. Evidence secured illegally by a citizen is admissible. See *Eleuteri v. Richman,* 26 *N. J.* 506 (1958). And the federal judicial rule barring evidence obtained in violation of the wire tap statute, 47 *U. S. C. A.* § 605, is not binding upon the states. *Schwartz v. State of Texas,* 344 *U. S.* 199, 73 *S. Ct.* 232, 97 *L. Ed.* 231 (1952) ; *Benanti v. United States,* 355 *U. S.* 96, 78 *S. Ct.* 155, 2 *L. Ed. 2d* 126 (1957).

Hence the issue is not one of constitutional law or evidence. Rather, since an unauthorized disclosure of an illegally intercepted message itself constitutes a violation of a criminal statute, the question sought to be presented to us is whether as a matter of judicial administration we should countenance the commission of crime in our courtrooms. *Commonwealth v. Chaitt,* 380 *Pa.* 532, 112 *A. 2d* 379 (*Sup. Ct.* 1955), *certiorari* denied 350 *U. S.* 829, 76 *S. Ct.* 59, 100 *L. Ed.* 740 (1955). Our statute, which will presently be set forth in full, expressly denounces the act of testifying, and the federal statute has been so construed. *Nardone v. United States,* 302 *U. S.* 379, 382, 58 *S. Ct.* 275, 82 *L. Ed.* 314 (1957) ; *Schwartz v. State of Texas, supra* (344 *U. S.* at *page* 201, 73 *S. Ct.* at *page* 234) ; *Benanti v. United States, supra* (355 *U. S.* 96, 78 *S. Ct.* 155, 2 *L. Ed. 2d* 126). The suggested issue is far-reaching, and we should not resolve it unless the case necessarily requires a decision. We

are satisfied that it does not, for the reason that Mrs. Kolano's testimony does not fall within either the state or federal acts.

We must bear in mind that we are construing criminal statutes and that the ultimate question is whether the witness is guilty of crime.

We have no difficulty with our statute, *N. J. S.* 2*A* :146–1, which reads:

"Any person who willfully and maliciously:
a. Cuts, breaks, taps or makes any connection with a telegraph or telephone line, wire, cable or instrument belonging to any other person; or
b. Reads, takes, copies, makes use of, discloses, publishes or testifies concerning a message, communication or report intended for any other person and passing over any such telegraph or telephone line, wire or cable in this state; or
c. Uses any apparatus unlawfully to do any of such acts—
Is guilty of a misdemeanor."

There was no violation of subsection (a). The words, "cuts, breaks, taps or makes any connection with" all import intervention into the line beyond the customary modes of connection. The failure to close the switchboard key, or the opening of the key, are beyond those terms. Moreover, the phrase, "telephone line, wire, cable or instrument belonging to any other person," quite plainly excludes the subscriber and his authorized representative—here the switchboard operator. The lines and equipment of course are the property of the telephone company, but the phrase does not refer to technical title but rather in lay parlance reflects the common designation of a line as belonging to the subscriber to whom it is furnished. In that sense, the line belonged to neither Vanderhave, Giardina nor Rosen; it was the line of Pantasote.

Nor does subsection (b) apply. The phrase *"any such* telegraph or telephone line, wire or cable" refers back to "telegraph or telephone line, wire, cable or instrument belonging to any other person" in subsection (a), and as we have said, the line involved belonged to Pantasote and not

to any of the conspirators. It may also be that the quoted phrase of subsection (b) also means "any such" telephone line as has been "cut, broken, tapped or connected" with, in violation of subsection (a). We pass without discussion the further question whether "maliciously" means "without legal justification or excuse" and as such would exclude the conduct of one who acts to protect his own property. See *Morss v. Forbes,* 24 *N. J.* 341, 359 (1957).

Thus we agree with the conclusion of the Appellate Division that our statute was not violated. The Appellate Division discussed the further question whether Mrs. Kolano's conduct amounted to eavesdropping. The issue is not involved, since if eavesdropping were found, still the disclosure of what she heard would not offend any penal measure and hence there would be no bar to the acceptance of her testimony.

We feel equally confident that Congress did not intend to condemn one in the situation of Mrs. Kolano.

It is settled, of course, that the federal act applies to intrastate calls. *Weiss v. United States,* 308 *U. S.* 321, 60 *S. Ct.* 269, 84 *L. Ed.* 298 (1939). Section 605 (a violation is denounced by section 501) of 47 *U. S. C. A.* reads in part:

"* * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; * * *."

Since as pointed out above the act of testifying (at least if unauthorized by the sender) is within the statutory ban against divulgence, the question is whether there was a prohibited interception.

In *Rathbun v. United States,* 355 *U. S.* 107, 78 *S. Ct.* 161, 163, 2 *L. Ed.* 2d 134 (1957), a subscriber anticipating a threatening call authorized a police officer to listen to the conversation on an extension previously installed for normal use. The court held there was no "interception" as Congress intended the word. Invoking the settled rule that "Every

statute must be interpreted in the light of reason and common understanding to reach the results intended by the legislature," it concluded that principle "would be violated if we attributed to Congress acceptance of the results that would occur here from the position argued by petitioner." It added that it "is unreasonable to believe that Congress meant to extend criminal liability to conduct which is wholly innocent and ordinary."

There is a factual difference between *Rathbun* and this case. In *Rathbun* one of the parties to the call authorized another to listen; here neither party did. But the cases are comparable in terms of the basic ground of decision of *Rathbun,* as we read it, to wit, that a criminal statute should not be invoked in defiance of the common sense of a situation. We find it difficult to believe that Congress intended to assure privacy to conspirators brazenly employing a subscriber's facilities to pillage him. Congress could hardly have intended a sanctuary for criminals within the home or plant of their victim.

We appreciate, of course, that the privacy the statute gives lawbreakers is the unavoidable incident of a larger purpose to assure privacy for the great body of decent citizens, and hence the clear reach of the statute may not be obscured by dwelling upon the villainy of the culprit who invokes it. Rather, in seeking the ambit of the act, our emphasis is upon the fundamental right to defend one's person and property. The question is whether Congress intended to denounce the reasonable and normal actions of a man in monitoring his own telephone lines to protect himself from others who use his lines without his authority in an effort to injure him. We think the answer is clear.

█ Hence we conclude that Pantasote and Mrs. Kolano as its representative were entitled to monitor its facilities to protect the company against suspected unlawful activities. In *Rathbun* the court observed that "Each party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear the conversation." It seems fitting to say in like terms

that one who uses a subscriber's phone to mulct him takes the risk of detection.

We need not pass upon another possible basis for the same result. Vanderhave having testified for the State, it is fair to infer that he authorized Mrs. Kolano to give testimony in corroboration of his. As stated, we are here concerned solely with whether her disclosure in the courtroom constitutes a divulgence for which she may be punished under section 605. That section speaks of divulgence by one "not being authorized by the sender." The answer would turn upon *Weiss v. United States, supra* (308 *U. S.* 321, 60 *S. Ct.* 269, 84 *L. Ed.* 298); see also *Goldstein v. United States,* 316 *U. S.* 114, 62 *S. Ct.* 1000, 86 *L. Ed.* 1312 (1942). *Weiss* may mean that in these circumstances the authority of Vanderhave would not satisfy the quoted statutory phrase in a criminal prosecution of the witness. On the other hand, *Weiss* perhaps should be read to bar such testimony in a federal court, not because the giving of it would itself lead to criminal consequences under the statute, but rather because of the federal judicial policy to further the underlying objective of the statute by denying use of "a fruit of the poisonous tree." *Nardone v. United States,* 308 *U. S.* 338, 341, 60 *S. Ct.* 266, 268, 84 *L. Ed.* 307 (1939). If the latter be a correct reading of that decision, the result we have reached could be posited as well upon the additional ground that Vanderhave authorized the disclosure.

The judgment is accordingly affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, FRANCIS and PROCTOR—6.

*For reversal*—None.