UNITED STATES of America

v.

Kenneth Herbert HANNA and
Nathan Modell.

No. 66–69–CR.

United States District Court
S. D. Florida.

Sept. 26, 1966.

Wallace H. Johnson and Brian P. Getting, Criminal Division, Department of Justice, for the United States.

Ben Cohen and James J. Hogan, Miami Beach, Fla., for defendants.

## MEMORANDUM OPINION

MEHRTENS, District Judge.

The Defendant, Kenneth Herbert Hanna, has been charged with a violation of the wire fraud statute, 18 U.S.C. Section 1343. He and Nathan Modell are also charged with violations of the interstate gambling laws (18 U.S.C. Sections 1084, 1952).

As I view it, all the evidence in this case consists either of tape recordings of telephone conversations between Hanna and Modell, or Hanna and others, which resulted from the monitoring of Hanna's telephone lines by the telephone company, or evidence seized from Hanna and Modell pursuant to search warrants which were based on probable cause substantially from the tape conversations. Defendants have moved to suppress the tape recordings and the seized matter assigning six separate counts therefor.

The testimony before this Court reflects that the search warrants and subsequents indictment was based on facts developed initially by the telephone company. Their investigation started when Gerard Doyle, Security Officer of the Southern Bell Telephone & Telegraph Company, was notified on November 24, 1965 by a superior in New York City that they had detected an unusual condition on a certain telephone line in Miami and that this condition was such to indicate that a "blue box" was being used on the line. A "blue box" is a device which circumvents the toll equipment of the telephone company and as a result, a "blue box" user is not charged for any long distance telephone calls placed with the aid of this device.

Preliminary investigation by Doyle determined that the suspected telephone number was subscribed to by the Defendant Hanna. Doyle knew Hanna by reputation to be a local gambler and based on prior experience he knew that gamblers frequently used "blue boxes" or similar devices in their gambling business. Doyle contacted Ray Fowler, a telephone company engineer, and directed him to determine whether the unusual condition on Hanna's line in fact was a "blue box".

Fowler's check confirmed use of a "blue box" on Hanna's line. Doyle then directed Fowler to attach a tape recorder to the telephone line in order to pick up the electronic signals emanating from the "blue box". Doyle testified that this was necessary to determine where the calls were going and whether they were completed. The monitor operated during the first 35–45 seconds of all telephone calls placed with the "blue box" and ran sporadically until December 21, 1965 when Doyle received a subpoena directing him to produce the tapes of these telephone conversations before a Federal Grand Jury in Philadelphia, Pennsylvania.

The tapes were given by United States Justice Department Attorneys handling the Grand Jury to the agents of the Federal Bureau of Investigation in Philadelphia who forwarded them to Special Agent William Heist, in Miami, Florida. Based upon the evidence indicating fraud on the telephone company and on the telephone conversations contained on the tapes, Heist obtained a search warrant for Hanna's home and an arrest warrant for his person. Heist also determined that one of the persons called by Hanna was Nat Modell in New York City. Based on the information contained in the conversations between Hanna and Modell, which showed that they were engaged in interstate bookmaking, warrants also were obtained for Modell and his apartment in New York. On January 8, 1966, the warrants in New York and Miami were executed. Bookmaking parapher-

nalia was seized at both places. In addition, the agents found and seized a "blue box" at Hanna's residence.

Special Agent Heist was in charge of the execution of the warrants at Hanna's residence. He testified that he and another agent, Maurice Roussell, approached the door to Hanna's apartment carrying the warrant and Heist's Federal Bureau of Investigation credentials prominently displayed on a clipboard. Heist rang the door bell, but was unable to hear it ring inside. After approximately ten seconds Heist, in a loud audible voice, announced that he was an agent of the Federal Bureau of Investigation and that he was there to serve an arrest and search warrant. There was still no answer from within so Heist continued ringing the door bell and knocking for exactly one minute and fifteen seconds. At this time he directed Roussell to knock the door down.

As Heist stepped inside, he viewed Hanna, approximately twenty-five feet away, standing in a hallway across the living room. He shouted "Hanna, this is the FBI, you are under arrest". Heist pursued Hanna into the apartment's bathroom at the end of the hall. The Defendant was apprehended standing over a just flushed commode.

## I.

Defendants first ask the Court to suppress all evidence of the tape recordings of Hanna's telephone conversations. They contend that the monitoring and subsequent disclosure to the Federal Bureau of Investigation violates Section 605 of Title 47, United States Code and the Fourth Amendment to the United States Constitution. It is the Government's position on the other hand, that the telephone company, having ample reasons to believe they were being defrauded, was perfectly within its right in monitoring to determine how, by whom, and of how much, that their subsequent disclosure of the result of their investigation to a law enforcement agency with the obvious hope that the offenders be prosecuted was only logical, and that, as a result, no violation of 605 occurred. Common sense alone would compel me to adopt the Government's view. In addition, however, there is ample authority to support it.

This precise factual situation has been litigated very recently in two other Federal District Courts. In both cases, monitoring by the telephone company to detect illegal "blue box" installations was involved. In both cases, motions to suppress based on the same grounds urged here were denied. United States v. Henry Loman et al., No. 36270 (S.D.Cal. July, 1966); United States v. Thomas McCay et al., No. 66–76 Cr. (W.D.Okl. June, 1966). Previously, the same issues and arguments presented here had been decided in two other Federal District Courts where monitoring by the telephone company was undertaken to detect fraudulent use of telephone service by other means. In both cases, motions to suppress based on the same grounds urged here were denied. United States v. Beckley et al., 259 F.Supp. 567 (N.D.Ga., 1965); United States v. Benjamin Lassoff, No. 28247 (E.D.La., 1962).

With respect to reported cases perhaps the most persuasive is United States v. Sugden, 226 F.2d 281 (9th Cir., 1955), aff'd per curiam, 351 U.S. 916, 76 S.Ct. 709, 100 L.Ed. 1449 (1956). Therein, the Defendants had been indicted for violating the immigration laws and moved to suppress evidence obtained by the monitoring of their farm radio communications. The radio station was licensed during the entire monitoring period but because the Defendants had failed to fill out a blank in their application for operators' licenses, the latter did not become effective until one day before the monitoring ended. The trial court granted the motion to suppress on the basis of 47 U.S.C. § 605 and also dismissed the indictments. On appeal by the Government, the Ninth Circuit held that because the Defendants were not legally using the station until the effective date of their operators' licenses, free use could be made of any radio communications before that

time and anyone who hears such illegal broadcasts "may make full disclosure". Id. at 285.

Thus, *Sugden* stands for the proposition that once it has been determined that the use of the communication facility is illegal, no complaint will be heard as to the disclosure of the contents of the conversation. Moreover in *Sugden*, the Defendants had some color of authority to use the radio station. In the instant case, however, the telephone company was the only party lawfully on the lines and, as such, has the right to record and divulge in its discretion.

Furthermore, in an analogous case, United States v. Gallo, 123 F.2d 229 (2nd Cir., 1941), the Defendant contended that the admission into evidence of telephone company records of calls was forbidden by 47 U.S.C. § 605. Rejecting this, the Court said at p. 231:

> The statute was not intended to prescribe long-standing, reasonable business practices of communications companies. When a person takes up a telephone he knows that the company will make, or may make, some kind of a record of the event, and he must be deemed to consent to whatever record the business convenience of the company requires. If by any stretch of language the making of such a record would be termed an "interception" of the communications, it is one which the sender has authorized. Hence it is not within the ban of the statute.

See, Cameron v. State, 365 P.2d 576 (Okl. Cr.App.1961); State v. Giardina, 27 N.J. 313, 142 A.2d 609 (1958).

Regular toll records being thus admissible, the records made necessary by Defendant's unlawful frustration of standard record-keeping procedures are also admissible. Otherwise, Defendants would be given preferential treatment over persons lawfully using the telephone.

Moreover, the Defendants should not be permitted to invoke the fact of their unlawful conduct as the legal basis for preventing use of the evidence of that unlawful conduct. Proof of their unlawful use of the wires requires the admission rather than the exclusion of the evidence of that use. United States v. Gris, 247 F.2d 860 (2nd Cir., 1957). It would appear the telephone company has the legal right, and, in fact, the obligation to "listen in".[1] Section 605 cannot be invoked to preclude the telephone company from protecting its facilities against unlawful use. The unique position of the telephone company as a common carrier subject to extensive regulation under the Federal Communications Act and charged with a high degree of responsibility for seeing to it that services are not rendered contrary to Federal Communications Commission policies, the clearly defined policies contained in the Communications Act against discriminations in service amoung subscribers and free service, and the recognized right of telephone companies to regulate the use of subscriber's phones to some degree, makes it plain that there must be read into Section 605 an implied right to monitor under certain conditions.

The Supreme Court said, in Benanti v. United States, 355 U.S. 96, 100, 78 S.Ct. 155, 157, 2 L.Ed.2d 126 (1957):

> " * * * the statute created a prohibition against any person violating the integrity of a system of telephonic communication * * * ".

In view of this general purpose it would be highly unlikely that Congress intended that Section 605 should preclude the telephone company from pursuing the only effective means of protecting the integrity of that system from theft.

---

1. It is important to note that the protection intended and afforded by 47 U.S. C. § 605 is of the means of communication and not of the secrecy of the conversation. Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942); the privacy of the conduit, Dia-

mond v. United States, 108 F.2d 859 (6th Cir., 1938); or the protection of the message from interception and divulgement by unauthorized persons. United States v. Fuller, 202 F.Supp. 356 (N.D. Cal., 1962).

## II.

■ The Defendants next raised the objection that the electronic device seized at Hanna's premises was not, in fact, "a 'blue box' attached to a telephone" but was a black box with red push buttons and ear pieces. They contend, as grounds for suppression, that this item was not particularly described in the search warrant. This contention has no merit.

The complete description was clearly stated on the face of the warrant, that being "an electronic device, commonly known as 'blue box' attached to a telephone". From this alone, it is evident that the term "blue box" is nominative rather than descriptive, that is, it is the term by which the device is commonly known and, except by accident, has no reference to its actual color: This was clearly developed by Mr. Doyle's testimony in addition to Agent Heist's affidavit. The testimony showed the term originated from the fact that the first device discovered was encased in a blue box and, as a result, all subsequent devices performing similar functions have been called "blue boxes". Implicit in this is the fact that whether blue, black with red buttons, red with black buttons, umber or indigo, the device is still called a "blue box". Moreover, a detailed description of the device and its workings is contained in the affidavit which makes it abundantly clear that the agents knew exactly what they were looking for and which, indeed, they found.

## III.

■ As a third ground, Defendants charged that the agents failed to execute the search warrant in compliance with 18 U.S.C. Section 3109. The testimony does not support this contention. In fact, announcement was made and a reasonable time elapsed between the initial announcement and the entrance so as to amply satisfy the statutory requirement.

## IV.

■ Next, they allege that various toll records were examined by the Federal Bureau of Investigation belonging to Defendants Hanna and Modell and that this examination was in violation of 47 U.S.C. Section 605. No evidence was presented to support this contention. Therefore, I need not consider the issue of whether, in fact, it is necessary for a subpoena to issue prior to an examination of toll records by the Federal Bureau of Investigation. Moreover, if as the evidence demonstrated Defendant Hanna was using a device to avoid toll charges, it is axiomatic that there would be no toll records for his telephone and, thus, nothing to examine.

## V.

■ As their fifth point in the motion to suppress, Defendants ask that the currency taken when they were arrested be returned. They contend that there was no relationship between the money and any offense against the United States.

No evidence was presented which would indicate that the money was involved in any illegal business. Therefore, the Defendants are entitled to the return of this property.

## VI.

■ Defendant Modell, during the oral argument, asked the Court to suppress the telephone company tapes as to him since he was neither using nor had any knowledge of the "blue box". In support of this position, he cited United States v. Tane, 329 F.2d 848 (2nd Cir. 1964).

*Tane* holds merely that a Defendant, not a party to a telephone conversation, can challenge the legality of telephone monitoring. Here, Modell has been afforded that opportunity. However, as stated above, the conversations were legally obtained and therefore can be used as they pertain to Modell, whether he knew of the "blue box" or not.

For the above reasons, the motion to suppress is, and the same shall be, denied except as to the currency in the amount of twenty-three hundred dollars ($2300) taken from Defendant Hanna and sixteen hundred dollars ($1600) taken from the

435

Defendant Modell. The Government is ordered to return this currency to the Defendants. This opinion is designed to supplement this Court's order of September 13, 1966.