Robert **HUFF** and Mary Holt, Plaintiffs,

v.

**MICHIGAN BELL TELEPHONE COM-PANY, a Michigan corporation, and Al-bert Langtry, Jointly and Severally, De-fendants.**

**Civ. A. No. 25463.**

United States District Court
E. D. Michigan, S. D.

Dec. 22, 1967.

Joseph R. Bathey, Detroit, Mich., for plaintiffs.

A. H. Williams, Butzel, Eaman, Long, Gust & Kennedy, and Jack H. Shuler, Alan R. Waterstone, Detroit, Mich., for defendants.

LEVIN, District Judge.

The question raised by the defendants' motion to dismiss is whether a telephone company and its agent have violated the federal wiretapping law, 47 U.S.C. § 605.

The plaintiffs, Robert Huff and Mary Holt, were employed by the defendant, Michigan Bell Telephone Company, as a mechanic and elevator supervisor respectively. A telephone of the usual type with a regular exchange number was placed in an employees' lounge of the central offices of the Telephone Company. The employer's instructions were that the telephone could be used for personal calls but only when necessary during relief periods by the employees who used this lounge.

In June 1962 the defendants suspected the plaintiffs were using the telephone in the lounge to place and receive wagers in violation of the Michigan gambling laws. Defendant Albert Langtry, an investigating agent of the Telephone Company, placed a pen register on the telephone for several days. This is a device which records the number of incoming calls and the specific number dialed for each outgoing call. It does not record the conversation. The pen register indicated the telephone had an excessive number of incoming and outgoing calls. Langtry then installed a wiretapping mechanism and by monitoring and recording calls confirmed his suspicion that plaintiffs were gambling over the telephone.

During this period, plaintiff Holt was observed at about one o'clock every afternoon carrying a bag or envelope to a waiting automobile outside the Telephone Company building. On July 5 company officials saw betting paraphernalia in the possession and control of the plaintiffs and a few days later they were discharged. Plaintiffs then filed for unemployment compensation, and the Telephone Company, in order to avoid the payment of compensation to these two discharged employees, produced Langtry as a witness before the referee of Michigan Employment Security Commission. Langtry disclosed the existence of the telephone conversations and their substance. Plaintiffs then brought this suit for damages in a substantial sum.

■ The second clause of Section 605, supra, provides:

"and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person;"

Violations of Section 605 may result in civil liability for damages. Reitmeister v. Reitmeister, 162 F.2d 691 (2nd Cir. 1947). The statute applies to intra-state communications if the lines are connected to interstate lines, as they are here. Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298 (1939); Elkins v. United States, 266 F.2d 588 (9th Cir. 1959). A pen register has been found to be an interception within the meaning of this clause, since it discloses the "existence" of a communication, United States v. Caplan, 255 F.Supp. 805 (E.D.Mich. 1966); United States v. Dote, 371 F.2d 176 (7th Cir. 1966), and of course a wiretapping mechanism placed on a line is an interception.

The Supreme Court first construed this section in 1937, three years after its passage. The Court said:

"We nevertheless face the fact that the plain words of § 605 forbid anyone, unless authorized by the sender, to intercept a telephone message, and direct in equally clear language that *'no person'* shall divulge or publish the message or its substance to *'any person.'*" Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937)

The defendants rely upon Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957), as indicating that the words of the statute need not be interpreted literally in opposition to the common sense of a situation. They say it is unreasonable to assume that Congress meant to prohibit a telephone company from protecting itself by means of wiretapping when there is probable cause to believe that its employees are using its premises and telephone facilities to engage in illegal activities.

■ In *Rathbun* the Court held that even though the statute refers to authorization by the "sender" only, the receiver

of a telephone call may also authorize another person to listen to a conversation. The statute provides in its third clause that "no person not being entitled thereto shall receive * * * any * * * communication by wire or radio and use the same * * *", 47 U.S.C. § 605, and the Court reasoned from this that either party may "entitle" someone to receive and use a communication and that one so "entitled" does not "intercept" within the meaning of the statute. "Every statute must be interpreted in the light of reason and common understanding to reach the results intended by the legislature." 355 U.S. at 109, 78 S.Ct. at 163. "Each party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear the conversation." 355 U.S. at 111, 78 S.Ct. at 164.

■ Here neither the sender nor the receiver of the telephone call authorized an interception. The telephone which was tapped was a regular business phone and neither party to any of the conversations had reason to believe that a pen register or any type of extension had been connected to the line. Under the circumstances, I do not find that the plaintiffs impliedly consented to defendants' intercepting their calls.

The defendants assert that the courts have found an exception to the application of Section 605 in cases involving telephone companies. United States v. Beckley, 259 F.Supp. 567 (N.D.Ga. 1965); United States v. Hanna, 260 F. Supp. 430 (S.D.Fla. 1966); Brandon v. United States, 382 F.2d 607 (10th Cir. 1967); see also Schmukler v. Ohio Bell Telephone Co., 116 N.E.2d 819 (Com.Pl. Cuyahoga County, Ohio 1953). These cases are inapplicable. They hold that a telephone company has the right to monitor the telephones within its system when it suspects that it is being deprived of its lawful tariffs. In fact, it has the duty to protect its revenues, to prevent discrimination in charges and services, 47 U.S.C. §§ 202, 203(c), and to assure proper service to the public. But even in this class of cases, the Court of Appeals for the 9th Circuit recently held that to sanction wiretapping on the part of the telephone company beyond that necessary for such purposes "would tend to emasculate the protection of privacy Section 605 was intended to protect." Bubis v. United States, 384 F.2d 643 (9th Cir. 1967).[*]

■ The defendants then argue that the Telephone Company has the same right as any telephone subscriber to tap its lines. They cite a New York state court decision interpreting a New York law. People v. Appelbaum, 277 App.Div. 43, 97 N.Y.S.2d 807 (2d Dept. 1950), aff'd 301 N.Y. 738, 95 N.E.2d 410; accord, Commonwealth v. Goldberg, 208 Pa.Super. 513, 224 A.2d 91 (1966). They also urge the court to adopt the pronouncements of a New Jersey decision interpreting Federal as well as state law, State v. Giardina, 27 N.J. 313, 142 A.2d 609 (1958), which reasons that Section 605 and *Rathbun,* supra, do not prohibit a telephone subscriber from "monitoring his own telephone lines to protect himself from others who use his lines without his authority in an effort to injure him." 27 N.J. at 318, 142 A.2d at 612. The facts in *Giardina* are different from those with which we are here confronted. In any event, I am constrained to say that I disagree with that distinguished court on the interpretation of the law and I hold that the Congressional enactment does not allow an exception for the subscriber to a telephone.

■ The Telephone Company's ownership of the telephone line and of the premises where it was installed did not "entitle" the Company or its agent to intercept calls made over that line. One of the interests protected by the statute is the privacy of conversations between a "sender" and a "receiver", and nowhere in the statute is any special recognition given to any rights of the subscriber to intercept and divulge. The exception urged by the defendants for telephone subscribers, if adopted, would open the door to vastly increased use of the wiretap. No one using the telephone of

another could be confident that the conversation was not being tapped, and the right of privacy intended to be protected by the statute would be severely impaired.

I am not unmindful of the fact that the illegal activities of employees on the premises of their employer cannot be countenanced, but that matter is not before me. I am concerned here only with the violation of the Federal Communications Act by the defendants.

It is hereby ordered that the defendants' motion to dismiss is denied. This case will be set for an early trial on the question of damages.