**CASEY et al. v. UNITED STATES.**

No. 12387.

United States Court of Appeals
Ninth Circuit.

June 27, 1951.

As Amended on Denial of Rehearing
Sept. 14, 1951.

Writ of Certiorari Granted Dec. 3, 1951.
See 72 S.Ct. 200.

F. M. Reischling, Seattle, Wash., for appellants.

J. Charles Dennis, U. S. Atty., Vaughn Evans, Kenneth J. Selander and John F. Dore, Asst. U. S. Attys., Seattle, Wash., for appellee.

Before HEALY, Circuit Judge, and FEE and SOLOMON, District Judges.

SOLOMON, District Judge.

Appellants were jointly indicted for violating provisions of the Federal Communications Act, 47 U.S.C.A. § 151 et seq., hereinafter referred to as the "Act." The indictment contained seven counts.

The first three counts charged that the appellants violated § 301 of the Act in that they "did unlawfully, willfully, and knowingly use and operate certain apparatus for the transmission of energy, communications, and signals by radio without a station license" issued by the Federal Communications Commission, hereinafter called the "Commission." In one of such counts, the communication was from Seattle to Portland; in another, from Seattle to a vessel sailing upon navigable waters; and in the third, from one place to another place in the State of Washington but the effects thereof extended beyond the borders of such State.

The second three counts charged that the appellants violated § 318 of the Act, in that they used and operated the apparatus and transmitted the communications and signals by radio without a radio operator's license issued by the Commission. The seventh count charged appellants with a conspiracy. The defendants were convicted on the first six counts and were acquitted on the conspiracy count.

The appeal raises five issues:

1. Admissibility of evidence obtained by an alleged unlawful search and seizure.

2. Admissibility of radio messages between appellants.

3. Correctness of instructions.

4. Sufficiency of the evidence to sustain the verdict.

5. Constitutionality of portions of the Act.

Appellant LaClair filed a timely motion to suppress as evidence certain radio equipment seized from his Packard automobile and to direct that the equipment be returned to him. In his affidavit, he stated that Federal officers "seized and searched affiant's automobile which was parked in a garage separate from and at a distance from said hotel and took from a certain automobile some radio equipment and other articles." This motion was denied. Thereafter, at the trial over appellants' objection, the Government was permitted to introduce in evidence such radio equipment.

The evidence showed that, during the latter part of January, 1949, the Commission in Seattle received information from the Everett, Washington police that an unlicensed radio transmitter had been used as part of a scheme to bilk race track bookies. This scheme operated as follows: In addition to accomplices at various race tracks, three men worked as a team. The first one learned the name of the winning horse by telephone direct from the track. The second, standing near the bookie's place of business, received this information from the first by radio. The third, stationed beside the second entered the bookie's place of business and placed

a bet on the winning horse after the race had been run.

Early in February, two amateur radio operators in Oregon reported to the Commission that they had heard voice signals, without call letters, on a frequency of 3540 kilocycles, which is on a portion of the band reserved for code operation. The messages dealt with horse racing and contained numerous statements such as "testing for voice modulation—do you hear me— raise your hand if you hear me." Similar messages on another frequency were reported by a Seattle amateur and by investigators on a Coast Guard cutter in Puget Sound.

During this period, the Commission was making its own investigation. On several successive days, in downtown Seattle, investigators, equipped with mobile direction finding equipment, heard the same voices and similar messages on a frequency of 3540 kilocycles. The direction finder showed that the broadcasts came from different locations and this indicated that the station was being moved almost daily. Each time, however, the voices went off the air before the place, from which the broadcast originated, was discovered. On February 10, when the investigators heard the same voices again, they determined that the broadcast emanated from the Benjamin Franklin Hotel. By the use of instruments, they detected that the signals were coming from room 1217. When they stood outside the door of room 1217, they recognized the voices as being the same that they had heard over the radio. They learned that a number of long distance telephone calls had been placed from this room and that the registered occupants were the three appellants in this case.

The chief investigator left the hotel and went to the United States Court House to obtain a warrant for appellants' arrest. Upon arriving at the Court House, he was informed by the hotel manager that the appellants were about to check out and that two pieces of luggage had been removed from their room to an automobile parked in the Motor Ramp Garage, a public garage located near the hotel. An investigator called the garage and requested an attendant to disable the car so that it could not be moved. This was done. Immediately thereafter, two investigators went to the garage where they were shown a 1948 Packard convertible coupe belonging to appellant LaClair. At their request, the attendant unlocked the car and searched it. He found two bags, one of which contained the radio equipment. These investigators, together with a Seattle police officer whom they had called, remained at the garage.

In the meantime, the chief investigator, having obtained a warrant for the arrest of appellants, returned to the hotel and placed them under arrest. Their room was searched but no equipment was found therein. The chief investigator then went to the garage where he found a friend of appellants, who had attempted to obtain possession of the car without a claim check, talking to the investigators. The chief investigator removed the two bags from the car and seized them.

Appellants contend that the trial court erred in denying the motion to suppress the evidence so obtained, and in permitting such evidence to be introduced over their objections, for the reason that the search and seizure were unlawful, having been made without a warrant, not incidental to a lawful arrest, and solely for the purpose of securing evidence with which to support an indictment.

It is unnecessary to consider whether the search and seizure in this case violated constitutional rights, for the reason that the right to immunity from unreasonable searches and seizures is a personal right and can only be asserted by one who claims ownership or right to possession of the premises searched or the property seized. Lewis v. United States, 9 Cir., 1925, 6 F.2d 222, 223; Armstrong v. United States, 9 Cir., 1926, 16 F.2d 62, 65; Connolly v. Medalie, 2 Cir., 1932, 58 F.2d 629, 630; In re Nassetta, 2 Cir., 1942, 125 F.2d 924, 925; Chepo v. United States, 3 Cir., 1930, 46 F.2d 70, 71.

None of the appellants claimed ownership or interest in the Motor Ramp Garage,

the place where the search occurred. Therefore, they had no standing to complain of the search. Nor did the appellants claim ownership or an interest in the radio equipment seized in the showing made on the motion to suppress. Therefore, they were not entitled to prevent the introduction in evidence of the articles seized in such search.

The conclusion above reached is not affected by the circumstance that the articles seized were located in appellant LaClair's automobile. In our opinion, since appellant LaClair did not claim ownership or an interest in the articles seized, any constitutional immunity to which he might otherwise have been entitled with respect to his automobile and its contents was lost when he placed the garage, a bailee for hire, in possession of his automobile.

■ There is no merit to appellants' contention that the trial court erred in admitting in evidence the substance of radio messages between appellants. § 605 of the Act, 47 U.S.C.A. 605, which prohibits the interception and divulgence of communications without the consent or approval of the sender, refers to communications over licensed facilities. The appellants were unlicensed operators transmitting voice messages over an unlicensed station, without call letters, on a portion of the band reserved for Morse Code operations. The protections of the Act were never intended for, nor do they cover, such communications which are themselves illegal.

■ Appellants claim that the instructions with respect to Counts IV, V and VI were erroneous. Such counts charged that the appellants, in violation of § 318, operated a radio station without an operator's license issued by the Commission. The instructions on such counts required the jury to find that appellants failed to have an operator's license. The instructions also require the jury to find that appellants "unlawfully, willfully, and knowingly used and operated a radio station" which, appellants assert, is a violation of § 301, not § 318. According to appellants' theory, the jury was required to find that they violated both § 301 and § 318 in order to convict them of having violated only § 301. Appellants' interpretation, if correct, placed an added burden on the Government and in no way prejudiced the appellants.

■ Appellants also complain that the court erred in failing to define a "radio station" and conduct constituting a "willful and knowing violation of the section." Radio stations are in such common use that no definition was needed. The court instructed on intent and on the elements to be considered in determining whether the violations were knowing and willful. It was unnecessary to repeat such instruction for each count.

■ Appellants' contention that the evidence was insufficient to warrant convictions on any count is without merit. The evidence that the appellants operated a radio station without either a station license or an operator's license is undisputed. There is ample evidence to support the jury's finding that the violations were knowing and willful.

■ In their last specification, appellants contend that § 318 of the Act is unconstitutional in that it contains an unlawful delegation of legislative authority to the Commission. § 318 limits the operation of a radio station to a person holding an operator's license issued by the Commission, subject to the following proviso: "That the Commission if it shall find that the public interest, convenience, or necessity will be served thereby may waive or modify the foregoing provisions of this section for the operation of any station except (1) stations for which licensed operators are required by international agreement, (2) stations for which licensed operators are required for safety purposes, (3) stations engaged in broadcasting, and (4) stations operated as common carriers on frequencies below thirty thousand kilocycles:"

Although the area not covered by the exceptions is narrow, appellants contend that in such area the Commission is permitted to exercise arbitrary power because the Act contains no guide or standard whereby the exercise of discretion may be

measured. The standard of "public interest, convenience or necessity," particularly when construed with the purposes and requirements of the Act, is adequate. Federal Radio Commission v. Nelson Bros. Co., 289 U.S. 266, 285, 53 S.Ct. 627, 77 L.Ed. 1166. National Broadcasting Co. v. United States, 319 U.S. 190, 225, 63 S.Ct. 997, 87 L.Ed. 1344.

Affirmed.