**UNITED STATES of America,**
**Plaintiff,**

v.

**Kenneth G. FULLER, Defendant.**

**Cr. No. 37927.**

United States District Court
N. D. California, S. D.

Feb. 7, 1962.

Cecil F. Poole, U. S. Atty., Frederick J. Woelflen, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Bostick & Petris, Oakland, Cal., for defendant.

OLIVER J. CARTER, District Judge.

Defendant moves to dismiss an Information charging him with violations of 47 U.S.C.A. § 605, in seven counts. The gist of the charge in each count is that the defendant at various times "not being authorized by the sender, did unlawfully, knowingly, and wilfully intercept a radio communication and divulge and publish the existence, content, substance, purport and effect of such intercepted communication to a person." The Bill of Particulars filed by the Government discloses that the alleged interceptions were of radio messages of various police and fire agencies in the San Francisco Bay Area concerning police and fire communications, which the defendant in turn divulged to radio station KEWB in Oakland, California. The pertinent portion of Section 605 provides:

"\* \* \* and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."

The last clause of Section 605 states a proviso:

"\* \* \* That this section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication broadcast, or transmitted by amateurs or others for the use of the general public \* \* \*."

Defendant's motion to dismiss is grounded on the statute, the charges in the Information, and the information disclosed in the Bill of Particulars. His stated ground for dismissal is that the Information "constitutes an unconstitutional abridgment of defendant's rights as guaranteed by the First Amendment to the United States Constitution." He argues, alternatively, that, if prosecution is not barred on constitutional grounds, it is barred by 47 U.S.C.A. § 326, and by the proviso in Section 605. He suggests that this case is the first reported case in the twenty-seven year history of Section 605 of a prosecution under the section against a newsgathering agency for divulging to a radio station newsworthy portions of police short wave broadcasts. In support of his contention that the charge in the Information, as amplified by the Bill of Particulars, is an unconstitutional interference and abridgment of the freedom of the press he states:

"As may be determined from the Information on file and the Bill of Particulars voluntarily presented by the government, the Defendant is being prosecuted for providing radio station KEWB with various news items of local interest which are alleged to have been obtained from local police broadcasts, without first securing the consent of the police stations involved.

"If freedom of the press means anything, it must mean that a news-gatherer not be restricted in his sources of news, consistent with laws of privacy and security. Here, no question of privacy or security arises since, as the court may judicially notice, facility of communication and not security or privacy is the purpose of a police short-wave broadcast. Anyone with the price of a receiving apparatus can over hear a local police broadcast. Indeed, if it were to be argued that the maintenance of security and privacy were an objective, it could be said that since anyone can listen, the police are derelict in not protecting their messages by various available 'scramble' devices." (Memo. in support of Motion to Dismiss p. 2.)

The present record in this case may not support all of defendant's assumptions as to the precise nature of the radio communications which are the subject of the charges in the Information. Nor is there any evidence in the record concerning "privacy and security" in the context used in the argument. However, even if defendant's assumptions are correct, defendant's claim of unconstitutionality must fail. Freedom of the press, like all the other freedoms guaranteed in the First Amendment, is not an unlimited, unrestricted, absolute right. From Gitlow v. People of State of New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138, to Times Film Corp. v. City of Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L. Ed.2d 403, the Supreme Court has affirmed this proposition. In the latter case the Court said:

"In this perspective we consider the prior decisions of this Court touching on the problem. Beginning over a third of a century ago in Gitlow v. People of the State of New York, 1925, 268 U.S. 652 [45 S.Ct. 625, 69 L.Ed. 1138], they have consistently reserved for future decision possible situations in which the claimed First Amendment privilege might have to give way to the necessities of the public welfare. It has never been held that liberty of speech

is absolute. Nor has it been suggested that all previous restraints on speech are invalid. On the contrary, in Near v. State of Minnesota ex rel. Olson, 1931, 283 U.S. 697, 715–716 [51 S.Ct. 625, 631, 75 L.Ed. 1357], Chief Justice Hughes, in discussing the classic legal statements concerning the immunity of the press from censorship, observed that the principle forbidding previous restraint 'is stated too broadly, if every such restraint is deemed to be prohibited * * *. [T]he protection even as to previous restraint is not absolutely unlimited.' " (p. 47, 81 S.Ct., p. 393)

■ The constitutionality of Section 605 has been sustained by the courts on a number of occasions. See: Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314, and 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298; Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126; Diamond v. United States, Cir. 6, 1938, 108 F.2d 859; Massengale v. United States, Cir. 6, 1957, 240 F.2d 781; Elkins v. United States, Cir. 9, 1959, 266 F.2d 588, vacated on other grounds, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669. The judicial gloss on Section 605 has been cast most often in the context of some form of wire-tapping of some form of wire communication, and the question has usually been posed by the claimed inadmissibility of evidence obtained in that manner. This, says defendant, distinguishes the present case. However, the broad sweep assigned to Section 605 as a part of the Federal Communications Act (47 U.S.C.A. § 151 et seq.) in the cases cannot be limited to so-called wire communications, as distinguished from radio communications. The Section prohibits interception and divulgement of a *"communication by wire or radio."* Therefore, the alleged conduct of the defendant falls squarely within the proscription of the statute. The main purpose of Section 605 is to protect the means of communication, so that mes-

sages transmitted by means of radio, or other forms of transmission, will be protected from interception and divulgement by unauthorized persons. See: Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322; Diamond v. United States, supra.

The proviso to the Section excludes its application to "any radio communication broadcast * * * for the use of the general public, or relating to ships in distress." This exception indicates that Congress was intending to protect all communication by radio transmission of a private nature, and was at the same time protecting the right of the general public to use without restriction radio communications broadcast for public use. That Congress has the constitutional power to regulate the field of communication by radio and other means of interstate or foreign communication is too well established to require citation of authority. If it can forbid wire-tapping, it can forbid interception and divulgement of protected radio messages.

■ Although not formally stated as a ground for the motion, defendant urges that Congress did not intend "to impinge on a free press," arguing that "if it was the intent of this Section to impose a limit of news sources on press agencies, Congress would have unequivocally so expressed itself." In Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L. Ed. 314, the Supreme Court answered a similar argument by saying:

"The government contends that Congress did not intend to prohibit tapping wires to procure evidence. It is said that this court, in Olmstead v. United States, 277 U.S. 438 [48 S.Ct. 564, 72 L.Ed. 944], held such evidence admissible at common law despite the fact that a state statute made wire-tapping a crime; and the argument proceeds that since the Olmstead decision departments of the federal government, with the knowledge of Congress, have, to a limited extent, permitted their agents to tap wires in aid of detec-

tion and conviction of criminals. It is shown that, in spite of its knowledge of the practice, Congress refrained from adopting legislation outlawing it, although bills, so providing, have been introduced. The Communications Act, so it is claimed, was passed only for the purpose of reenacting the provisions of the Radio Act of 1927 so as to make it applicable to wire messages and to transfer jurisdiction over radio and wire communications to the newly constituted Federal Communications Commission, and therefore the phraseology of the statute ought not to be construed as changing the practically identical provision on the subject which was a part of the Radio Act when the Olmstead case was decided.

"We nevertheless face the fact that the plain words of section 605 forbid anyone, unless authorized by the sender, to intercept a telephone message, and direct in equally clear language that 'no person' shall divulge or publish the message or its substance to 'any person.' To recite the contents of the message in testimony before a court is to divulge the message. The conclusion that the act forbids such testimony seems to us unshaken by the government's arguments." (302 U.S. 381–382, 58 S.Ct. 276)

Furthermore, in the Federal Communications Act Congress did give consideration to the use of radio by governmental safety agencies, such as police and fire departments. Section 4(o), (47 U. S.C.A. § 154(o)) states:

"For the purpose of obtaining maximum effectiveness from the use of radio and wire communications in connection with safety of life and property, the Commission shall investigate and study all phases of the problem and the best methods of obtaining the cooperation and coordination of these systems."

Under this Section the Federal Communications Commission has set up a comprehensive set of regulations for public safety radio services, which include police and fire agencies. See 47 C.F.R. 10.1, et seq. The purpose of the regulations was "to provide a service of radio-communication essential either to the discharge of non-federal governmental functions relating to the public safety or the alleviation of an emergency endangering life or property." (Section 10.1(b).) In Section 10.2(b) police radio service is described as "A Public Safety service of radio communication essential to official police activities." Similar language is used to describe fire and other safety organizations. Detailed regulations are set out in Sections 10.251 et seq., and in Section 10.252(a) permissible communications are defined as "communications essential to official police activities of the licensee" with a proviso that "the Police Radio Service may be used for the conduct of communications essential to official fire activities of the licensee in addition to those essential to official police activities of the licensee until October 31, 1963."

It is not unreasonable to conclude that Congress by the inclusion of Section 605 in the Act intended to protect messages of public safety radio services from interception and divulgement by any person, including the press, until the public safety agency using the means of communication authorized the release of the message. In any event, the intent and purpose of Section 605 is so clear and apparent that any change in the law is for the Congress, and not the courts.

■ Defendant also urges that he comes within the proviso of Section 605, in that the broadcasts must be interpreted as being made for the use of the general public. At this stage of the proceeding there is no evidence from which this issue can be determined. The Information is in the language of the statute, and the Bill of Particulars does not disclose any broadcast for use of the general public. Therefore, this issue should be determined from the evidence, and not on a pre-trial motion to dismiss.

Finally, defendant claims that prosecution is barred by Section 326. This Section provides:

"Nothing in this chapter shall be understood or construed to give the Commission the power of censorship over the radio communications or signals transmitted by any radio station, and no regulation or condition shall be promulgated or fixed by the Commission which shall interfere with the right of free speech by means of radio communication."

The short answer to defendant's contention is that the Commission is not the charging party, and defendant's possible criminal liability stems from the statute, not any act or regulation of the Commission. Section 326 proscribes the power of the Commission to censor radio communications, and does not limit the power of the United States Attorney to initiate a prosecution under Section 605.

IT IS, THEREFORE, ORDERED that defendant's motion to dismiss be, and the same is hereby denied.