[No. C019365. Third Dist. Apr. 24, 1996.]

THE PEOPLE, Plaintiff and Appellant, v.
GILBERT A. CHAVEZ et al., Defendants and Respondents.

## COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson and Karen L. Ziskind, Deputy Attorneys General, for Plaintiff and Appellant.

Jeffrey J. Stuetz, K. Douglas Cummings, Berley & DeVito and Diane E. Berley for Defendants and Respondents.

## OPINION

DAVIS, J.—A jury convicted each of the three defendants of two drug sale offenses. The trial court then granted defendants' motion for new trial, finding their counsel ineffective for failing to find the avenue by which the evidence could have been suppressed. We conclude the trial court erred in finding counsel ineffective and therefore erred in granting defendants' motion for new trial. In so doing we find that the restrictions on eavesdropping contained in the Cordless and Cellular Radio Telephone Privacy Act of 1990 are fully subject to the law enforcement exception codified in Penal Code section 633. Consequently, we reverse the order granting defendants a new trial and remand the matter for the trial court to reinstate the defendants' convictions.

## Background

At the end of June 1991, a confidential citizen informant (CI) contacted the El Dorado County Sheriff's Department to report that while he was listening to his radio scanner, he overheard a cordless telephone conversation concerning a narcotics transaction.[1] The CI explained he had a multi-channel scanner which allowed him to monitor the radio portion of cordless telephone conversations. The typical cordless phone consists of a base unit, which is attached to the land-based telephone line system, and a hand-held or "remote" unit which transmits and receives radio signals that carry the actual conversation to and from the base unit. (See *U.S.* v. *Smith* (5th Cir. 1992) 978 F.2d 171, 178; Pen. Code, § 632.7, subd. (c)(2).)

The CI sought authorization to continue the monitoring. On the basis of section 633, a deputy sheriff, in consultation with a higher ranking officer, authorized the CI to continue the monitoring and to record the conversations. The CI obliged, using his scanner which he had purchased from Radio Shack. The sheriff's department supplied the CI with a recorder and some cassette tapes.

Later, officers from the sheriff's department took over the monitoring of the cordless telephone conversations, which were occurring over defendant Gilbert A. Chavez's cordless telephone. This monitoring by the CI on behalf of the police and by the police themselves was undertaken indiscriminately.[2]

Based on this surveillance, a search warrant was issued. The search yielded incriminating evidence on which defendants Chavez, Raymond Shank, and Carole Miller were convicted of the drug sale offenses.

Prior to trial, defendants had moved unsuccessfully to suppress the evidence against them. In proceedings culminating in a motion for new trial, the trial court revisited its ruling on the pretrial suppression motion and granted the motion for new trial. In granting the motion for new trial, the trial court determined that defense counsel had been ineffective in failing to find the key to suppressing the evidence found in the search. That key was the interplay of section 633 with a federal statute, 47 United States Code Annotated section 605 (hereafter, section 605).

---

[1] We refer to CI in the masculine sense simply for convenience and not for identification.

[2] Conversations the CI recorded before police authorization are not at issue in this appeal.

## DISCUSSION

Before we can address the substance of the motion for new trial, we must consider whether we can hear this appeal at all.

### 1. *Appealability*

Confused by the postconviction proceedings in this case, defendants claim the People cannot maintain this appeal. Defendants assert that the trial court's order suppressing the evidence is cognizable only under section 1538.5 via a writ.

The problem for defendants is that the trial court did not grant a motion to suppress evidence. The trial court granted a motion for new trial, finding counsel ineffective for failing to suppress evidence. ■ A trial court may grant a motion for new trial on the ground of ineffective assistance of counsel. (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 582-583 [189 Cal.Rptr. 855, 659 P.2d 1144].) The People can appeal from an order granting a new trial. (§ 1238, subd. (a)(3).) We therefore can hear this appeal.

### 2. *The Motion for New Trial*

In the motion for new trial proceedings, the trial court focused on the section 633 phrase "prior to the effective date of this chapter."[3] The chapter referred to in section 633 is part 1, title 15, chapter 1.5 of the Penal Code, which sets forth California's Invasion of Privacy Act. The Invasion of Privacy Act generally forbids wiretapping and electronic eavesdropping. (See §§ 630-637.6; *People* v. *Conklin* (1974) 12 Cal.3d 259, 263 [114 Cal.Rptr. 241, 522 P.2d 1049].) The effective date of chapter 1.5 was November 8, 1967. (See 49 West's Ann. Pen. Code (1988 ed.) Effective Dates of Laws, p. XXI.)

---

[3]Section 633 states: "Nothing in Section 631 [forbidding wiretapping], 632 [forbidding electronic eavesdropping], 632.5 [forbidding interception of cellular phones], 632.6 [forbidding interception of cordless phones], or 632.7 [forbidding the recording of cordless or cellular phones] prohibits the Attorney General, any district attorney, or any assistant, deputy, or investigator of the Attorney General or any district attorney, any officer of the California Highway Patrol, any chief of police, assistant chief of police, or police officer of a city or city and county, any sheriff, undersheriff, or deputy sheriff regularly employed and paid in that capacity by a county, or any person acting pursuant to the direction of one of these law enforcement officers acting within the scope of his or her authority, from overhearing or recording any communication that they could lawfully overhear or record prior to the effective date of this chapter. [¶] Nothing in Section 631, 632, 632.5, 632.6, or 632.7 renders inadmissible any evidence obtained by the above named persons by means of overhearing or recording any communication that they could lawfully overhear or record prior to the effective date of this chapter."

The trial court construed the first paragraph of Penal Code section 633 to mean that law enforcement agencies are prohibited from engaging in electronic eavesdropping or recording activity if they were prohibited from doing so "prior to the effective date of [the] chapter," November 8, 1967. The trial court correctly determined that, prior to November 8, 1967, neither federal constitutional law nor state law on electronic eavesdropping prohibited law enforcement from overhearing, through a scanner and without a warrant, the radio portion of cordless phone communications. Federal constitutional law prohibited such endeavors only if there was a physical intrusion or trespass (*Olmstead* v. *United States* (1928) 277 U.S. 438 [72 L.Ed. 944, 48 S.Ct. 564, 66 A.L.R. 376]; see *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507]; *Kaiser* v. *New York* (1969) 394 U.S. 280, 281-282 [22 L.Ed.2d 274, 277-278, 89 S.Ct. 1044]), while state law exempted radio communications from protection against electronic eavesdropping (former § 653j, subd. (a); Stats. 1963, ch. 1886, § 1, p. 3871). However, the trial court found that, prior to November 8, 1967, a federal statute, section 605, prohibited law enforcement agencies from intercepting radio communications.[4] Consequently, the trial court determined that defense counsel should have used Penal Code section 633 and section 605 to suppress the evidence found in the search in this case. The trial court found defense counsel ineffective for failing to do so and granted defendants a new trial.

■ Simply for purposes of our analysis, we will assume the trial court correctly interpreted Penal Code section 633 as holding law enforcement to the electronic surveillance prohibitions in force prior to the November 8, 1967, effective date of the Invasion of Privacy chapter. As noted, the trial court found one of these prohibitions to be section 605, prohibiting law enforcement from intercepting radio communications. This is where we will part company with the trial court. We conclude that the pre-November 8, 1967, version of section 605—actually enacted in 1934—does not prohibit law enforcement, or its properly authorized designee, from overhearing or recording the radio portion of cordless phone communications through a radio scanner without a warrant.

We start by noting that overhearing the radio portion of cordless phone communications via a radio scanner falls under the electronic surveillance method of electronic eavesdropping rather than wiretapping. (*United States* v. *Hall* (9th Cir. 1973) 488 F.2d 193, 194, 196-197 [conversations over a radio-telephone in a car "were intercepted by an ordinary radio receiver and

---

[4]The pre-November 8, 1967, version of section 605 stated in part that "no person not being authorized by the sender shall intercept any communication and divulge . . . the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person . . . ."

not by a phone tap"; "the eavesdroppers merely tuned their radio receivers to the proper station"]; see Carr, The Law of Electronic Surveillance (1986), §§ 1.1(a), 1.1(b), p. 1-3 ["Wiretapping, as the name itself suggests, refers to the interception of wire (i.e., telephone) communications. [It] usually involves a connection to the wires . . . , although it is possible to intercept wire communications . . . [without necessarily] . . . cut[ting] the wires . . . . [¶] "The term bug[ging] refers to a[n] . . . electronic device which overhears, broadcasts, or records a speaker's conversation."]; Van Boven, *Electronic Surveillance in California: A Study in State Legislative Control* (1969) 57 Cal. L.Rev. 1182, 1183, fn. 6 ["Electronic surveillance comprises the practices commonly known as wiretapping and electronic eavesdropping or 'bugging.' Wiretapping refers to the interception by any method of telegraphic or telephonic communications; the term electronic eavesdropping encompasses all other forms of electronic surveillance."]; *People* v. *Ratekin* (1989) 212 Cal.App.3d 1165, 1168 [261 Cal.Rptr. 143] ["Penal Code section 631 prohibits 'wiretapping,' i.e., intercepting communications by an unauthorized *connection* to the transmission line. Penal Code section 632 prohibits 'eavesdropping,' i.e., the interception of communications by the use of equipment which is not connected to any transmission line. In order to violate section 631 it is necessary that the intercepted communication be carried over '. . . telegraph or telephone wire, line, cable, or instrument of any internal telephonic communication system . . . .' No such limitation is found in section 632." (Italics in original.)].)

The pre-November 8, 1967, section 605 applied in a quite limited way to electronic eavesdropping. The section's primary focus, as judicially construed, was on excluding evidence obtained through wiretapping, but the section also protected nonpublic radio broadcasts meeting radio licensing requirements. (*Nardone* v. *United States* (1937) 302 U.S. 379 [82 L.Ed. 314, 58 S.Ct. 275]; *Weiss* v. *United States* (1939) 308 U.S. 321 [84 L.Ed. 298, 60 S.Ct. 269]; *United States* v. *Sugden* (9th Cir. 1955) 226 F.2d 281; *Casey* v. *United States* (9th Cir 1951) 191 F.2d 1, 4 [revd. on other grounds, 343 U.S. 808 (96 L.Ed. 1317, 72 S.Ct. 999)]; *United States* v. *Shah* (W.D.Pa. 1974) 371 F.Supp. 1170, 1173; *United States* v. *Laughlin* (D.D.C. 1964) 226 F.Supp. 112; *United States* v. *Fuller* (N.D.Cal. 1962) 202 F.Supp. 356; *Goldman* v. *United States* (1942) 316 U.S. 129 [86 L.Ed. 1322, 62 S.Ct. 993]; *Goldstein* v. *United States* (1942) 316 U.S. 114 [86 L.Ed. 1312, 62 S.Ct. 1000]; *On Lee* v. *United States* (1952) 343 U.S. 747 [96 L.Ed. 1270, 72 S.Ct. 967]; *Benanti* v. *United States* (1957) 355 U.S. 96 [2 L.Ed.2d 126, 78 S.Ct. 155]; Carr, The Law of Electronic Surveillance, *supra*, § 1.3(b), p. 1-9, § 1.4(b), pp. 1-21 to 1-22; 3 Wright, Federal Practice and Procedure: Criminal 2d (1982) § 665, pp. 616-620; LaFave & Israel, Criminal Procedure (1984) § 4.1, pp. 360-364; Van Boven, *Electronics Surveillance in California: A Study in State Lesgislative Control*, *supra*, 57 Cal.L.Rev. at pp.

1188-1189; Sullivan, *Wiretapping and Eavesdropping: A Review of the Current Law* (1966) 18 Hastings L.J. 59, 61-65.)

The general purpose of the pre-November 8, 1967 section 605 in the "radio communication" sphere was to protect the "means" of radio communication, more specifically, the integrity of the communication system and the privacy of those who use licensed, nonpublic radio facilities in a proper and normal manner. (*Bubis* v. *United States* (9th Cir. 1967) 384 F.2d 643, 647; *United States* v. *Sugden*, *supra*, 226 F.2d at p. 284 [in *Sugden*, for example, the "means" encompassed a licensed radio station manned by licensed operators]; see Carr, The Law of Electronic Surveillance, *supra*, § 1.4(b), pp. 1-21 to 1-22; see also *United States* v. *Borgese* (S.D. N.Y. 1964) 235 F.Supp. 286, 291.)

A look at section 605's scant legislative history supports the view that this 1934 enactment was not a broad-based privacy measure applicable to yet unimagined radio technologies. Section 605 was enacted as part of the Federal Communications Act of 1934 and apparently derived, with minor changes, from section 27 of the Radio Act of 1927. (Sullivan, *Wiretapping and Eavesdropping: A Review of the Current Law*, *supra*, 18 Hastings L.J. at p. 62; Brown & Helland, *Section 605 of the Communications Act: Teaching A Salty Old Sea Dog New Tricks* (1985) 34 Cath. U. L.Rev. 635, 644-645.) It appears that the Federal Communications Act of 1934 was passed with little debate or consideration of section 605; the primary purpose of the 1934 Federal Communications Act was simply to create the Federal Communications Commission as a new governmental agency with powers to regulate the wire and radio communications industries. (*Ibid.*; *Benanti* v. *United States*, *supra*, 355 U.S. at pp. 104-105 [2 L.Ed.2d at pp. 132-133]; *Nardone* v. *United States*, *supra*, 302 U.S. at pp. 381-383 [82 L.Ed.2d at pp. 315-317].) Because the section 605 amendments to the Radio Act of 1927 were viewed as insubstantial, there is little discussion of section 605 in the reports accompanying the 1934 legislation. (Brown & Helland, *supra*, 34 Cath. U. L.Rev. at p. 645.)

Many viewed section 605 as Congress's response to the Supreme Court's invitation in *Olmstead* v. *United States*, *supra*, 277 U.S. 438 to enact legislation to exclude wiretap evidence (*Olmstead* had held that the Fourth Amendment did not prohibit nontrespassory wiretapping); others did not view section 605 in this way. (See Sullivan, *Wiretapping and Eavesdropping: A Review of the Current Law*, *supra*, 18 Hastings L.J. at pp. 61-62; *Nardone* v. *United States*, *supra*, 302 U.S. at pp. 382-383 [82 L.Ed.2d at pp. 316-317]; Carr, The Law of Electronic Surveillance, *supra*, § 1.3(b), p. 1-9; LaFave & Israel, Criminal Procedure, *supra*, § 4.1, pp. 361-362.) Section 605 remained

the same from 1934 until 1968 when it was amended in conjunction with the adoption of title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C.A. §§ 2510-2521; hereafter, Title III).

This backdrop shows that section 605 was part of a legislative scheme to govern and protect, among other things, the early radio broadcast industry. Sophisticated modern technologies not subject to radio licensing requirements, such as the radio portion of cordless phone communications, were not within the ambit of this 1934 enactment. Therefore, the pre-November 8, 1967, version of section 605 (i.e., the 1934 version) did not prohibit law enforcement from intercepting, with a scanner but without a warrant, the radio portion of cordless phone communications.

There is a 1973 decision from the Ninth Circuit that can be construed as being at odds with our analysis, *United States* v. *Hall, supra*, 488 F.2d 193. Upon close examination, however, the *Hall* opinion is consistent with what we have said.

One of the issues in *Hall* was whether the 1968 version of section 605 (amended in conjunction with the adoption of Title III) prohibited law enforcement from intercepting, without a warrant, radio-telephone conversations using an ordinary radio receiver (the radio-telephone was in a car). The Ninth Circuit in *Hall* characterized its 1955 decision in *Sugden* as holding " 'that unless the Congress orders otherwise' the exclusionary rule applies when non-FCC governmental agents or private individuals intercept non-public broadcasts without consent in violation of § 605." (488 F.2d at p. 195.) The question in *Hall* was whether Congress had ordered otherwise in its 1968 amendment to section 605. Looking at legislative history, the court in *Hall* said yes because section 605 no longer covered law enforcement; law enforcement electronic surveillance was now to be governed exclusively by Title III. (488 F.2d at pp. 195-196.)

For two reasons, *Hall* cannot be read as concluding that the pre-November 8, 1967, version of section 605 prohibited law enforcement from intercepting the radio portion of cordless phone communications without a warrant. First, *Hall* did not involve this version of section 605; *Hall* construed the 1968 version. Second, *Hall* recognized that *Sugden*'s view of section 605 prohibited non-FCC law enforcement personnel from "intercept[ing] non-public [radio] *broadcasts* without consent . . . ." (488 F.2d at p. 195, italics added.) This recognition is consistent with how *Sugden* viewed section 605: as protecting against the warrantless interception by general law enforcement of a *licensed* shortwave *radio station's* nonpublic *broadcast*. (*United States* v. *Sugden, supra*, 226 F.2d at pp. 282-285; see also *Casey* v. *United*

*States*, *supra*, 191 F.2d at p. 4 [*Casey* is a 1951 Ninth Circuit decision stating that section 605, "which prohibits the interception and divulgence of communications without the consent or approval of the sender, refers to communications over licensed facilities"]; *United States* v. *Shah*, *supra*, 371 F.Supp. at p. 1173; *United States* v. *Fuller*, *supra*, 202 F.Supp. 356.)

We conclude the trial court erred in granting defendants' motion for new trial on the ground that defense counsel were ineffective in failing to suppress the evidence under Penal Code section 633 and section 605.

Nor can defendants find any suppression refuge in the other relevant law on the subject of electronic surveillance. That relevant law is the Fourth Amendment to the United States Constitution; Title III, as amended by the Electronic Communications Privacy Act of 1986 (Pub.L. No. 99-508, 100 Stat. 1848); and the 1990 amendment to the Invasion of Privacy Act known as the "Cordless and Cellular Radio Telephone Privacy Act" (Assem. Bill No. 3457, Stats. 1990, ch. 696, §§ 1, 2, 4, 5, pp. 3267-3270).

Neither the Fourth Amendment nor Title III protected the radio portion of cordless telephone conversations in 1991; that portion was not deemed to encompass a reasonable expectation of privacy and had been completely excluded from federal statutory protection. (*McKamey* v. *Roach* (6th Cir. 1995) 55 F.3d 1236; *In re Askin* (4th Cir. 1995) 47 F.3d 100; *U.S.* v. *Smith*, *supra*, 978 F.2d 171; *Tyler* v. *Berodt* (8th Cir. 1989) 877 F.2d 705; *U.S.* v. *Carr* (E.D.N.C. 1992) 805 F.Supp. 1266; *Edwards* v. *Bardwell* (M.D.La. 1986) 632 F.Supp. 584; *State* v. *Smith* (1989) 149 Wis. 89 [438 N.W.2d 571]; *State* v. *Delaurier* (R.I. 1985) 488 A.2d 688; *State* v. *Howard* (1984) 235 Kan. 236 [679 P.2d 197]; former 18 U.S.C.A. §§ 2510(1) & 2510(12)(A) (1988).)

In the 1990 amendment to the Invasion of Privacy Act known as the "Cordless and Cellular Radio Telephone Privacy Act" (hereafter, the 1990 Cordless Act or simply the Cordless Act), the California Legislature, among other things, added section 632.6, which prohibits the interception of a communication involving a cordless phone. (Stats. 1990, ch. 696, §§ 1, 4, pp. 3267, 3269-3270.) Pursuant to the 1990 amendment, the Legislature found that the "United States Supreme Court ha[d] failed to guarantee persons a reasonable expectation of privacy in conversations with or to a person using a cordless telephone unit;" the Legislature also declared that "[p]arties to a cordless telephone communication have a reasonable expectation of privacy which the right of privacy protects, and this act is intended to provide a legal recourse to those persons whose private cordless telephone communications have been maliciously invaded by persons not intended to receive those communications." (Stats. 1990, ch. 696, § 2, p. 3268.)

The just-quoted legislative finding about the United States Supreme Court failing to guarantee a reasonable expectation of privacy in cordless phone conversations was prompted, according to the legislative history of the 1990 Cordless Act, by the United States Supreme Court's refusal to grant review in *Tyler* v. *Berodt, supra,* 877 F.2d 705. (Sen. Com. on Judiciary Rep., Assem. Bill No. 3457 (1989-1990 Reg. Sess.) June 19, 1990 p. 2.) *Tyler* involved a civil suit against certain private individuals and law enforcement officers who intercepted the Tylers' cordless phone conversations. The underlying facts in *Tyler* are similar to those presented here. In 1983, the Berodts, who lived four blocks from the Tylers, discovered that their cordless telephone could intercept conversations on the Tylers' cordless telephone. Based on what they overheard, the Berodts suspected Scott Tyler of criminal activity. The Berodts contacted the police and were urged to monitor Scott Tyler's conversations. No court order was obtained. After the Berodts recorded several of these conversations, criminal charges were filed against Scott Tyler. After the criminal case against Tyler failed to get off the ground, the Tylers sued the Berodts and the police for overhearing and recording their cordless phone conversations. In affirming a summary judgment against the Tylers in their civil suit, the court in *Tyler* stated flatly: "Courts have not accepted the assertions of privacy expectation by speakers who were aware that their conversation was being transmitted by cordless telephone. [Citations and fn. omitted.] Therefore, as a matter of federal law, we do not believe the Tylers had a justifiable expectation of privacy for their conversations. [fn. omitted.]" (877 F.2d at pp. 705-707.)[5]

By combining the legislative findings and declarations accompanying the 1990 Cordless Act with the legislative history showing the *Tyler* decision as a focus of that act, one could conclude that the Cordless Act's prohibition against intercepting cordless phone communications, set forth in section 632.6, applies to law enforcement. That would be a mistake.

The 1990 Cordless Act also amended section 633. That amendment *exempted* almost all law enforcement officers (and those acting under their direction) from the section 632.6 prohibition on intercepting cordless phone communications, if such interception was (or would have been) permitted prior to the effective date of the Invasion of Privacy Act (i.e., prior to Nov. 8, 1967). (§ 633; see *People* v. *Conklin, supra,* 12 Cal.3d at p. 263; Stats. 1990, ch. 696, § 5, p. 3270; See also Van Boven, *Electronic Surveillance in*

---

[5]Federal law in 1991 also denied protection to speakers who were *not* aware that their conversations were being transmitted by cordless telephone. (Former 18 U.S.C.A. §§ 2510(1), 2510(12)(A) (1988); *In re Askin, supra,* 47 F.3d at pp. 103-106; *McKamey* v. *Roach, supra,* 55 F.3d at pp. 1240-1241; but now see the Communications Assistance for Law Enforcement Act, 108 Stat. 4279 (1994).)

*California: A Study in State Legislative Control, supra*, 57 Cal.L.Rev. at pp. 1191, fn. 57, 1211-1212 [section 633 also permits warrantless electronic surveillance by law enforcement performed with the consent of one of the communicating parties—that is "consensual" surveillance].)

Exempting law enforcement from the blanket prohibition set forth in section 632.6 is an odd thing to do if that prohibition is to apply to law enforcement. (See also Van Boven, *Electronic Surveillance in California: A Study in State Legislative Control, supra*, 57 Cal.L.Rev. at p. 1211.) As section 633 reads in light of the Cordless Act amendment: "Nothing in Section . . . 632.6 . . . prohibits [designated law enforcement officers], or any person acting pursuant to the direction of one of these law enforcement officers acting within the scope of his or her authority, from overhearing or recording any communication that they could lawfully overhear or record prior to the effective date of this chapter [i.e., prior to November 8, 1967]. [¶] Nothing in Section . . . 632.6 . . . renders inadmissible any evidence obtained by the above-named persons by means of overhearing or recording any communication that they could lawfully overhear or record prior to the effective date of this chapter."     A basic rule of statutory construction is that statutory language must be construed in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute. (*West Pico Furniture Co.* v. *Pacific Finance Loans* (1970) 2 Cal.3d 594, 608 [86 Cal.Rptr. 793, 469 P.2d 665]; *Rudd* v. *California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 952 [268 Cal.Rptr. 624].) Section 632.6, in other words, must be read in light of the section 633 law enforcement exemption.

Perhaps the reason for the Legislature's declaration in the 1990 Cordless Act about "reasonable expectation of privacy" was to recognize that parties to cordless phone communications, in the private surveillance context, have a "reasonable expectation of privacy" in contrast to then-existing federal law. After all, the decision in *Tyler* encompassed in part a civil suit against a private citizen. (See 877 F.2d at pp. 705, 707, fn. 3.) And according to the legislative history of the Cordless Act, the "reasonable expectation of privacy" for parties to a cordless telephone communication is one "protected by the California Constitution, [with] legal recourse [being] provided to those persons whose privacy rights are maliciously invaded by persons not intended to receive those communications." (Sen. Rules Com., Office of Sen. Floor Analyses Rep., Assem. Bill No. 3457 (1989-1990 Reg. Sess.) p. 2.)

Other parts of the legislative history for the 1990 Cordless Act support this private surveillance focus. Set forth throughout that legislative history is the aim of the Cordless Act: to provide cordless telephone communications with the same privacy protection as cellular or wire telephone communications "by making the use of interception and eavesdropping devices [on

cordless telephones] a crime." (Sen. Rules Com., Office of Sen. Floor Analyses Rep., Assem. Bill No. 3457, *supra*, p. 1; Sen. Com. on Judiciary Rep., Assem. Bill No. 3457, *supra*, pp. 1-2; 3d reading analysis of Assem. Bill No. 3457, pp. 1-2; Assembly Com. on Public Safety Rep., Assem. Bill No. 3457 (1989-1990 Reg. Sess.) Apr. 17, 1990, p. 1; Assem. Public Safety Com., Republican Analysis (version Apr. 26, 1990).) Thus, the legislative history shows that the aim of the 1990 Cordless Act was to extend the criminal sanctions for unlawfully overhearing a wire or a cellular telephone communication to a cordless telephone communication. (*Ibid.*) When the Cordless Act's aim is discussed in the legislative history, the following statement (or something similar) always appears:

"*Under current law:*

"1) It is an alternate felony/misdemeanor to intentionally wiretap a confidential telephone or telegraph communication or to electronically eavesdrop or record a confidential communication without the consent of all parties. [§§ 631, 632.]

"2) It is an alternate felony/misdemeanor to maliciously intercept a communication transmitted between cellular radio telephones or between a cellular radio telephone and a landline telephone without the consent of all parties. [§ 632.5.]

"*This bill:*

"1) Makes it an alternate felony/misdemeanor to maliciously intercept a communication transmitted between cordless phones, . . . between a cordless telephone and a landline telephone, [or between a cordless telephone and a cellular telephone] without the consent of all parties." (Specific quotation taken from 3d reading analysis of Assem. Bill No. 3457, *supra*, p. 1.) These criminal provisions, which proscribe wiretapping as well as eavesdropping and interception without the consent of *all* parties to the communication, do not apply to law enforcement. (§ 633; see *People* v. *Conklin, supra,* 12 Cal.3d at p. 263; see also Van Boven, *Electronic Surveillance in California: A Study in State Legislative Control, supra,* 57 Cal.L.Rev. at pp. 1191, 1211-1212.) This aspect of the legislative history thus shows a private surveillance focus to the 1990 Cordless Act. (See also Van Boven, *supra,* at p. 1191.)

It is not necessary to determine exactly what the Legislature had in mind regarding its findings and declarations concerning the 1990 Cordless Act. There is another section in the Invasion of Privacy Act that plays a more

pivotal role in interpreting the Cordless Act. That section is section 630, which sets forth the Legislature's statement of intent regarding the Invasion of Privacy Act. Although the Legislature has amended the Invasion of Privacy Act on several occasions, including through the 1990 Cordless Act, the Legislature has never tinkered with its statement of intent set forth in section 630. According to that statement, "it is not the intent of the Legislature [in the chapter containing the Invasion of Privacy Act] to place greater restraints on the use of listening devices and techniques by law enforcement agencies than existed prior to the effective date of [that] chapter." We must read the Cordless Act in light of this statement of legislative intent. "[W]hen the Legislature has expressly declared its intent, the courts must accept that declaration." (*Rideout Hospital Foundation, Inc.* v. *County of Yuba* (1992) 8 Cal.App.4th 214, 221 [10 Cal.Rptr.2d 141].) Reading the Cordless Act in light of section 630 is also compelled by the rule of statutory construction noted earlier—that the language of a statute must be construed in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute. (*West Pico Furniture Co.* v. *Pacific Finance Loans*, *supra*, 2 Cal.3d at p. 608; *Rudd* v. *California Casualty Gen. Ins. Co.*, *supra*, 219 Cal.App.3d at p. 952.)

As we have seen from our previous discussion, law enforcement, prior to the effective date of the Invasion of Privacy Act (i.e., prior to November 8, 1967), could intercept, without a warrant, radio communications of the kind involving the radio portion of cordless phone transmissions. Section 630 tells us that nothing in the Invasion of Privacy Act is to be construed as placing greater restraints on law enforcement in the electronic surveillance context than existed prior to the effective date of that act. The 1990 Cordless Act is an amendment to the Invasion of Privacy Act and therefore part of it. Section 630 was left unaltered in the face of the Cordless Act amendment. Construing the 1990 Cordless Act in the context of the unwavering statement of legislative intent set forth in section 630, nothing in the Cordless Act is to be construed as placing greater restraints on law enforcement than existed prior to the effective date of the Invasion of Privacy Act. In short, defendants cannot claim the 1990 Cordless Act prohibited law enforcement in 1991 from intercepting, without a warrant, the radio portion of cordless phone communications via a radio scanner.[6]

In 1994, Congress amended Title III to extend protection to the radio portion of a cordless telephone conversation intercepted without the consent

---

[6]The 1990 Cordless Act cannot be dispensed with by deeming any of its exclusionary aspects to be impermissibly more protective of criminal defendants than the Fourth Amendment or federal statutory law in 1991. (See *In re Lance W.* (1985) 37 Cal.3d 873, 888-889 [210 Cal.Rptr. 631, 694 P.2d 744].) Both houses of the state Legislature passed the 1990 Cordless Act by more than two-thirds votes. (See *ibid.*; see Cal. Const., art. I, § 28, subd. (d); Stats. 1990, ch. 696 (Assem. Bill No. 3457): 1989-1990 Assem. J., p. 7540 (69-0 vote); 1989-1990 Sen. J., p. 7379 (32-2 vote); Stats. 1992, ch. 298 (Assem. Bill No. 2465):

of any party to the conversation. (Communications Assistance for Law Enforcement Act, Pub.L. No. 103-414 (1994) § 202(a), 108 Stat. 4279; See *In re Askin, supra*, 47 F.3d at pp. 102-103 & *McKamey* v. *Roach, supra*, 55 F.3d at p. 1238 [Title III as amended in 1986 and 1994 forbids the nonconsensual, warrantless interception of wire, oral and electronic communications].) However, "the fact that Congress in 1994 decided to expand privacy protections by extending Title III's coverage to include cordless telephone transmissions does not authorize a court to extend coverage under the earlier [version of Title III]." (*McKamey* v. *Roach, supra*, 55 F.3d at p. 1241; see also *In re Askin, supra*, 47 F.3d at p. 104.)

Apparently in the wake of this 1994 amendment to Title III, the California Legislature in 1995 added chapter 1.4 to part 1, title 15 of the Penal Code. (§§ 629.50 -629.98; Sen Bill No. 1016, Stats. 1995, ch. 971, § 10.) Chapter 1.4 allows a judge to authorize nonconsensual law enforcement interception of wire, electronic digital pager, or "electronic cellular telephone communications" (the quoted term is defined as "any cellular or cordless radio telephone communication" [§ 629.51]) if the judge determines, among other things, that probable cause exists to believe that an individual is committing, has committed, or is about to commit certain drug or violent offenses. (§§ 629.50-629.52.)

Apparently as one of its purposes, chapter 1.4 was added to provide the state enabling statute required under Title III. (See *People* v. *Conklin, supra*, 12 Cal.3d at pp. 271-272; Van Boven, *Electronic Surveillance in California: A Study in State Legislative Control, supra*, 57 Cal.L.Rev. at pp. 1197, fn. 95, 1211-1212.) Title III requires not only a warrant for an electronic surveillance search, but also a state enabling statute before such a warrant can be issued. (*Ibid.*)[7] The enactment of chapter 1.4 further supports the view that the 1990 Cordless Act did not prohibit law enforcement from intercepting cordless phone communications in 1991. Had the Cordless Act prohibited law enforcement in this way, it is unlikely chapter 1.4 would have been enacted since California would have already been prohibiting law enforcement from intercepting cordless phone communications. (Title III allows states to enact more restrictive electronic surveillance laws designed to

(1991-1992 Reg. Sess.) Sen. vote date, July 2, 1992; Assem. vote date, July 3, 1992 [showing Assem. vote of 63-0; Sen. vote of 37-0].)

[7]Since Title III requires a state enabling statute and California did not immediately enact such a statute following Title III's adoption in 1968, court-ordered nonconsensual electronic surveillance was initially barred in California under Title III. (See Van Boven, *Electronic Surveillance in California: A Study in State Legislative Control, supra*, 57 Cal.L.Rev. at pp. 1211-1212.) In the 1980's, the California Legislature enacted a state enabling statute. (Ch. 1.3 of pt. 1, tit. 15 of the Pen. Code; §§ 629-629.48; Stats. 1988, ch. 111, § 2, pp. 450-460 [governing law enforcement interception of wire communications].)

protect privacy. (See *People* v. *Conklin, supra,* 12 Cal.3d at pp. 271-272.)) In other words, if the 1990 Cordless Act were already flatly prohibiting law enforcement from intercepting these communications, it seems unlikely that the federal legislature's decision in 1994 to grant these communications *more* privacy protection would have prompted the California Legislature's decision in 1995 to grant them *less*.

We conclude the trial court erred in granting defendants' motion for new trial on the ground that defense counsel were ineffective in failing to suppress the evidence under Penal Code section 633 and 47 United States Code section 605.[8]

## DISPOSITION

The order granting a new trial to defendants is reversed. The matter is remanded and the trial court is directed to reinstate defendants' convictions.

Puglia, P. J., and Brown, J., concurred.

A petition for a rehearing was denied May 22, 1996, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied July 24, 1996. Brown, J., did not participate therein.

---

[8]Defendant Chavez claims the order for new trial can be upheld because defense counsel, for monetary reasons, failed to investigate adequately the recorded conversations and failed to hire a telecommunications expert. Chavez also claims the order for new trial can be upheld because the trial court denied him due process by failing to disclose the identity of the CI and the location of the CI's surveillance post. These matters involve factual issues or trial court rulings that are more appropriately handled in an appeal by defendants rather than in an appeal by the People. (See §§ 1237, 1259.) Consequently, we will not consider these issues in this appeal.